UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

CARLOS NUNO,

        Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

Case No. 1:22-cv-01553-CDB (SS)

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

(Doc. 12)

Plaintiff Carlos Nuno ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for disability benefits under the Social Security Act ("SSA" or "Act"). (Doc. 1). The matter is before the Court on the Administrative Record (Doc. 11; hereinafter, "AR") and the parties' briefs (Docs. 12, 15, 16), which were submitted without oral argument. Upon review of the record, the undersigned finds and rules as follows.[1]

## I.   BACKGROUND

### A.   Administrative Proceedings and ALJ's Decision

On June 29, 2020, Plaintiff filed an application under Title XVI of the Social Security Act, alleging disability beginning on June 1, 2020. (AR 23, 77, 207-16). Plaintiff's claim was denied

---

[1] Following all parties expression of consent to the jurisdiction of a U.S. magistrate judge, this action was reassigned to the undersigned for all further proceedings, including trial and entry of judgment, pursuant to 28 U.S.C. § 636(c)(1). (Doc. 10).

initially and again upon reconsideration.  (AR 77, 95).  Plaintiff requested a hearing before an Administrative Law Judge on January 27, 2021.  (AR 115).

Administrative Law Judge ("ALJ") Charles Woode held a hearing on August 30, 2021, wherein Plaintiff, his attorney Robert Ishikawa, and impartial vocational expert ("VE") Laura Lykins appeared.  (AR 38-65).  ALJ Woode issued an unfavorable decision on October 27, 2021.  (AR 23-32).  The Appeals Council denied Plaintiff's request for review on October 14, 2022, rendering the ALJ's decision as the final decision of the Commissioner.  (AR 1-7).  Plaintiff subsequently filed this action seeking judicial review of the ALJ's decision.  (Doc. 1).

In the decision, the ALJ considered Plaintiff's claims using the five-step sequential evaluation required by 20 C.F.R. § 416.920.  (AR 24).  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date.  (AR 25).

At step two, the ALJ found that Plaintiff had the following medically determinable impairment ("MDI") which significantly limits the ability to perform basic work activities: cervical degenerative disc disease and status post ACDF surgery.  The ALJ also found that Plaintiff had the non-severe impairments of asthma and visual loss.  (AR 25).

At step three, the ALJ found that Plaintiff did not have an impairment, or any combination of impairments, that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AR 26-27).

Prior to step four, the ALJ found the following RFC:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except that he can frequently stoop, kneel, crouch, and reach overhead bilaterally.  He can occasionally crawl and climb ramps or stairs, but never climb ladders, ropes, or scaffolds.

(AR 27).  In considering Plaintiff's symptoms and the extent to which these symptoms can reasonably be accepted as consistent with objective medical evidence and other evidence, the ALJ noted the two-step process as set forth in 20 C.F.R. § 416.929 and SSR 16-3p.  (AR 27-28).  The ALJ found that Plaintiff's MDIs could reasonably be expected to cause the alleged symptoms but that his statements concerning the intensity, persistence, and limiting effects of symptoms are not

entirely consistent with the medical and other evidence of record. (AR 27-29). The ALJ, citing to Plaintiff's hearing testimony and the medical record, determined that the evidence of record did not provide support for the existence of greater limitations above those assessed in the RFC regarding Plaintiff's impairments. (AR 28-29).

At step four, the ALJ determined that Plaintiff has no past relevant work, under 20 C.F.R. § 416.965, that he could perform. (AR 30). The ALJ found that Plaintiff could perform work that existed in significant numbers in the national economy, namely as a cashier II, small products assembler, and final inspector. (AR 31). The ALJ concluded that Plaintiff had not been under a disability since the date the application was filed. (AR 31-32).

### B.    Medical Record and Hearing Testimony

The relevant hearing testimony and medical record were reviewed by the Court and will be referenced below as necessary to this Court's decision.

## II.    LEGAL STANDARD

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id*. (quotation and citation omitted). "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997) (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

The court will review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which she did not rely. Social Security Act § 205, 42 U.S.C. § 405(g). In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. "The court will uphold the ALJ's conclusion when the

evidence is susceptible to more than one rational interpretation." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008).  Further, a district court will not reverse an ALJ's decision on account of an error that is harmless.  *Id.*  An error is harmless where it is "inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. (quotation and citation omitted).  The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed.  *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

A claimant must satisfy two conditions to be considered "disabled" and eligible for benefits within the meaning of the Social Security Act.  First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled. *Id*.

At step three, the Commissioner compares the claimant's impairment to impairments

recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits. 20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity," defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations (20 C.F.R. § 416.945(a)(1)).

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education, and past work experience. *Id.* If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, the analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. *Id*.

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## III.    ISSUES AND ANALYSIS

Plaintiff seeks judicial review of the Commissioner's final decision denying his application. Plaintiff raises four issues in his motion:

1. The ALJ failed to provide clear and convincing reasons to reject Plaintiff's symptom testimony regarding pain and physical dysfunction;

2. The ALJ failed to properly evaluate the medical source opinion of physician assistant Carlos Guzman;

3. The ALJ failed to properly evaluate whether Plaintiff met or equaled Listing of Impairment 5.08; and

4. The ALJ failed to consider Plaintiff's nonsevere impairments when formulating the RFC. *See* (Doc. 12).

**A. Whether the ALJ Failed to Provide Clear and Convincing Reasons to Reject Plaintiff's Symptom Testimony Regarding Pain and Dysfunction**

The ALJ is responsible for determining credibility,[2] resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). A plaintiff's statements of pain or other symptoms are not conclusive evidence of a physical or mental impairment or disability. 42 U.S.C. § 423(d)(5)(A); *see* SSR 16-3p, 2017 WL 5180304, at *2 ("an individual's statements of symptoms alone are not enough to establish the existence of a physical or mental impairment or disability"); *see also Orn v. Astrue*, 495 F.3d 625, 635 (9th Cir. 2007) ("An ALJ is not required to believe every allegation of disabling pain or other non-exertional impairment.") (internal quotation marks and citation omitted); *Molina v. Astrue*, 674 F.3d 1104, 1104 (9th Cir. 2012) (same), *superseded on other grounds by* 20 C.F.R. § 404.1502(a).

Determining whether a plaintiff's testimony regarding subjective pain or symptoms is credible requires the ALJ to engage in a two-step analysis. *Id.* at 1112. The ALJ must first determine if "the [plaintiff] has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal punctuation and citations omitted). This

---

[2] SSR 16-3p, which applies to disability applications heard by the agency on or after March 28, 2016, eliminated the use of the term "credibility" to emphasize that subjective symptom evaluation "is not an examination of an individual's character," but an endeavor to determine how "symptoms limit an individual's ability to perform work-related activities." SSR 16-3p, 2017 WL 5180304, at *3. Nevertheless, the Ninth Circuit continues to reference an ALJ's "credibility assessment" when reviewing claims that an ALJ impermissibly discounted a claimant's testimony. *See, e.g., Ferguson v. O'Malley*, 95 F.4th 1194, 1204 (9th Cir. 2024).

6

does not require the plaintiff to show that his impairment could be expected to cause the severity of the symptoms that are alleged, but only that it reasonably could have caused some degree of symptoms. *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

If the first step is met and there is no evidence of malingering, "the ALJ must provide 'specific, clear and convincing reasons for' rejecting the [plaintiff's] testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (*quoting Smolen*, 80 F.3d at 1281); *see Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1160 (9th Cir. 2008) (noting an adverse credibility finding must be based on "clear and convincing reasons"). The ALJ must make findings that support this conclusion, and the findings must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the plaintiff's testimony on permissible grounds and did not arbitrarily discredit the plaintiff's testimony. *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

The Ninth Circuit does "not require ALJs to perform a line-by-line exegesis of the [plaintiff's] testimony, nor do they require ALJs to draft dissertations when denying benefits." *Stewart v. Kijakazi*, No. 1:22-cv-00189-ADA-HBK, 2023 WL 4162767, at *5 (E.D. Cal. Jun. 22, 2023), *findings and recommendations adopted*, 2023 WL 5109769 (Aug. 8, 2023); *see Record v. Kijakazi*, No. 1:22-cv-00495-BAM, 2023 WL 2752097, at *4 (E.D. Cal. Mar. 31, 2023) ("Even if the ALJ's decision is not a model of clarity, where the ALJ's 'path may reasonably be discerned,' the Court will still defer to the ALJ's decision.") (quoting *Wilson v. Berryhill*, 757 Fed. App'x 595, 597 (9th Cir. 2019)). "The standard isn't whether our court is convinced, but instead, whether the ALJ's rationale is clear enough that it has the power to convince." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (noting that the clear and convincing standard requires an ALJ to show his work).

The ALJ may consider numerous factors in weighing a plaintiff's credibility, including "(1) ordinary techniques of credibility evaluation, such as the [plaintiff's] reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the [plaintiff] that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the [plaintiff's] daily activities." *Smolen*, 80 F.3d at 1284. In evaluating the credibility of symptom testimony, the ALJ must also consider the factors

identified in SSR 16-3P.  *Id.* (citing *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir. 1991)); accord

*Bray v. Comm'r Soc. Sec.*, 554 F.3d 1219, 1227 (9th Cir. 2009). These factors include:

> (1) Daily activities; (2) The location, duration, frequency, and intensity of pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms; (5) Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms; (6) Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (*e.g.*, lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3P, 2017 WL 5180304, at *7; *see* 20 C.F.R. § 404.1529(c)(3). If the ALJ's finding is

supported by substantial evidence, the court may not engage in second-guessing.  *Tommasetti*, 533

F.3d at 1039 (citations and internal quotation marks omitted).

The clear and convincing standard is "not an easy requirement to meet," as it is "'the most

demanding requirement in Social Security cases.'"  *Garrison v. Colvin,* 759 F.3d 995, 1015 (9th

Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).  "A

finding that a [plaintiff's] testimony is not credible must be sufficiently specific to allow a

reviewing court to conclude the adjudicator rejected the [plaintiff's] testimony on permissible

grounds and did not arbitrarily discredit a [plaintiff's] testimony regarding pain."  *Brown-Hunter*

*v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (citation and internal quotation marks omitted).

"The fact that a [plaintiff's] testimony is not fully corroborated by the objective medical

findings, in and of itself, is not a clear and convincing reason for rejecting it."  *Vertigan v. Halter,*

260 F.3d 1044, 1049 (9th Cir. 2001); *see* 20 C.F.R. § 404.1529(c)(2) ("[W]e will not reject your

statements about the intensity and persistence of your pain or other symptoms or about the effect

your symptoms have on your ability solely because the objective medical evidence does not

substantiate your statements.").  Rather, where a plaintiff's symptom testimony is not fully

substantiated by the objective medical record, the ALJ must provide additional reasons for

discounting the testimony.  *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005).  "The ALJ must

specify what testimony is not credible and identify the evidence that undermines the [plaintiff's]

8

complaints – '[g]eneral findings are insufficient.'" *Id.* (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

However, the medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The Ninth Circuit has distinguished testimony that is "uncorroborated" by the medical evidence from testimony that is "contradicted" by the medical records and concluded that contradictions with the medical records, by themselves, are enough to meet the clear and convincing standard. *Hairston v. Saul*, 827 Fed. App'x 772, 773 (9th Cir. 2020) (quoting *Carmickle*, 533 F.3d at 1161).

### i. Parties' Contentions

Plaintiff argues that the ALJ failed to satisfy the relevant clear and convincing standard for four reasons. (Doc. 12 at 16). First, the ALJ "mischaracterized the evidence because imaging studies from after Plaintiff's neck surgery still revealed significant abnormalities" and failed to explain why Plaintiff's "abnormal examination results of tenderness and restricted range of motion" were not "sufficient support for Plaintiff's symptom allegations." *Id.* at 16-17 (citing AR 354, 357, 363, 428, 430-31, 434, 448, 473, 506, 512, 524, 534, 563, 607, 617, 631). Second, the ALJ mischaracterized Plaintiff's treatment as "generally conservative care" despite Plaintiff being prescribed narcotic medication and receiving one steroid injection, after which he reported increased pain. *Id.* at 17 (citing AR 428, 431-32, 438, 448, 522, 687, 693, 699, 700).

Third, the ALJ relied only on the objective medical evidence to reject Plaintiff's complaints of pain, despite Plaintiff's "consistent and constant" complaints of severe pain present throughout the record. *Id.* at 17-18 (citing, *inter alia*, AR 432, 449, 566, 623, 617, 630). Fourth, the ALJ mischaracterized Plaintiff's use of marijuana. *Id.* at 18-19. Plaintiff notes that his physician assistant Carlos Guzman was aware of Plaintiff's use of medicinal marijuana and that Plaintiff could continue to use it "because it provided beneficial response in the management of his conditions." Plaintiff asserts that the ALJ's description of medicinal marijuana as "illegal drugs" suggests an examination of Plaintiff's character, in contravention of SSR 16-3p. *Id.* at 18-19 (citing AR 28, 29, 642, & *Kamp v. Kijakazi*, No. 21-35934, 2023 WL 1879469, *2 n.4 (9th Cir. Feb. 10, 2023)).

Defendant argues that the ALJ properly considered that Plaintiff's surgery "improved his neurological functioning" and the "evidence showed resolution of Plaintiff's neurological symptoms in the wake of surgery." (Doc. 15 at 21; citing AR 354, 370, 429-30, 434, 444, 451-452). Defendant notes that findings of reduced strength between January and April 2021, as well as in July 2021, do not "represent a period of at least 12 consecutive months and, thus, cannot establish disability." *Id.* (citing AR 607-08, 620, 631-32, 638). Defendant argues that, even if the ALJ "should have acknowledged this evidence, Plaintiff would not be prejudiced by the failure to do so" because the ALJ limited Plaintiff to lifting and carrying 20 pounds occasionally and 10 pounds frequently, and frequent reaching overhead bilaterally, "which is reasonably consistent with a slight reduction in shoulder/upper extremity strength." *Id.* at 22. Defendant argues that the ALJ reasonably found Plaintiff's treatment to be "generally conservative," in that he was prescribed pain medication which was ultimately terminated due to noncompliance with the medication contract due to Plaintiff's use of marijuana. *Id.* at 22-23 (citing, *inter alia*, AR 427, 435, 497, 525, 605, 608 617). Defendant asserts that the ALJ did not attack Plaintiff's character as the mention of "illegal drugs" was to "explain [Plaintiff's] noncompliance with Dr. Otchere's treatment plan[.]" *Id.* at 23-24 (citing, *inter alia*, AR 28, 608). Lastly, Defendant argues that the ALJ considered not just objective medical evidence but Plaintiff's improvement, conservative post-surgical treatment, and noncompliance therewith, as well as the prior administrative medical findings. *Id.* at 24-25.

### ii. Analysis

#### 1. The ALJ's Findings

After finding that Plaintiff's impairments could reasonably be expected to cause the alleged symptoms, the ALJ concluded that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not entirely consistent with the longitudinal treatment record. (AR 29); *see Treichler*, 775 F.3d at 1103 (noting that ALJs "routinely include this [boilerplate] statement in their written findings as an introduction ... before [identifying] what parts of the claimant's testimony were not credible and why").

The ALJ summarized the medical records and Plaintiff's alleged symptoms. (AR 28). The ALJ found that Plaintiff was "treated with prescription pain medications, but had difficulty

remaining abstinent of illegal drugs as required by his pain contract."   The ALJ noted that, despite Plaintiff's complaint of severe neck pain, his "physical examination consistently showed full muscle strength and no sensory loss," and a "cervical MRI performed in June 2021 showed no signs of any disc herniation, spinal stenosis, or nerve root compression."  (AR 28; citing AR 607-08). The ALJ found that Plaintiff's symptom testimony was "not wholly consistent with the medical evidence of record," find that the "weight of the evidence supports that surgery alleviated the motor and sensory deficits associated with his cervical condition" and that "imaging studies performed after the surgery showed no additional sources of significant symptoms, including disc herniation, spinal stenosis, or nerve root compression." Additionally, the ALJ determined that, though Plaintiff "consistently reported pain and has demonstrated some tenderness and decreased range of motion of his neck," when considered overall, "his physical examinations following surgery and generally conservative care do not support the allegedly extreme level of pain."  (AR 29).

## 2.   Plaintiff's Surgery

Plaintiff contends that ALJ relied only on the objective medical evidence to reject Plaintiff's complaints of pain, despite Plaintiff's "consistent and constant" complaints of severe pain present throughout the record.  (Doc. 12 at 17-18).   While Plaintiff's characterization of controlling authority is correct (*see Vertigan*, 260 F.3d at 1049), the ALJ's citation to said records does not, by itself, suggest the ALJ relied only on a lack of objective medical evidence in discounting Plaintiff's credibility.   The medical evidence "is still a relevant factor in determining the severity of the [plaintiff's] pain and its disabling effects" (*Rollins*, 261 F.3d at 857) and an ALJ properly may discount a plaintiff's symptomology testimony if she finds it is contradicted (not merely unsupported) by identified medical records. *Hairston*, 827 Fed. App'x at 773.  However, here, the ALJ cites to few sources of medical evidence to support his findings and, as discussed below, the record does not support the ALJ's determinations regarding Plaintiff's symptom testimony.

In support of his findings relating to Plaintiff's neck surgery and its aftereffects, the ALJ cites to treatment records from physician Justice Otchere, recording an appointment on April 15, 2021.  (AR 607-08).  The record notes that Plaintiff had neck spine surgery in February 2020 and his "primary chronic neck pain has improved with the surgery and he does not require chronic

opioid medication at this time." Dr. Otchere recommended a "cervical epidural steroid injection to improve the residual neck pain in addition with Voltaren gel and lidocaine cream for the cervical and shoulder muscle pain" and stated that Plaintiff "may continue with Flexeril and trials of physical therapy." (AR 608).

However, this appears to be boilerplate background language included by Dr. Otchere in each record. *See, e.g.*, (AR 614, 620) (including identical language for appointments on different dates). Immediately beneath this language, Dr. Otchere writes "[i]nterval note 4/15/2021." It appears Dr. Otchere records his assessment for each appointment beneath the boilerplate introductory language noted above, beginning his record for that date with "[i]interval note." *See, e.g.*, (AR 614, 620) (including interval notes with dates beside them, presumably recording for which visit each interval note is associated, with the most recent interval note being on the date of the record itself). Indeed, beneath the interval note dated April 15, 2021, there are eight additional interval notes dated from October 8, 2020, to March 18, 2021. (AR 608-09).

In the portion of the record dated April 15, 2021, Dr. Otchere notes that Plaintiff has "persistent neck and bilateral shoulder pain, however, pain medication is providing some relieve [sic]." Dr. Otchere records that the toxicology results were positive for THC that month, for the fourth consecutive time. Dr. Otchere states that Plaintiff received "multiple warnings of termination of Norco, due to violation of pain contract," and that he stated he had "very poor appetite and uses THC to improve appetite," with Plaintiff informed that Dr. Otchere "will refer back to PCP to redirect referral to pain management that is more suitable for patient, since it appears patient cannot stop use of THC." Dr. Otchere refilled the "pain medication for [Plaintiff] one last time." (AR 608). A review of the eight prior interval notes shows Plaintiff suffering from persistent neck and shoulder pain after his surgery. (AR 608-09). He had a successful epidural steroid injection on October 1, 2020. (AR 447-48). It was noted that there was "no pain relief after the cervical epidural steroid injection," "the chronic pain continues to impair his function," and that Plaintiff was on opioid pain medication, which provided some relief but pain persisted. Dr. Otchere noted on February 12, 2021, that the medication "is not providing adequate pain control" and increased the dosage of Norco. Dr. Otchere noted on March 18, 2021, that Plaintiff "still get

episodes [sic] of severe neck pain that causes headaches and vomiting," and he "highly recommend[ed] MRI imaging of cervical spine for further evaluation." (AR 608-09). That day, Dr. Otchere noted that Plaintiff reported chronic cervical and bilateral shoulder pain "with an overall pain level of 8 out of 10." (AR 617).

Dr. Otchere notes persistent pain, including severe pain, with steroid injections and opioid medications failing to control the pain. Thus, these records are contrary to the ALJ's conclusions that the record did not support allegedly extreme levels of pain and that the pain was controlled.

Additional records also contradict the ALJ's findings that surgery alleviated the motor and sensory deficits associated with his cervical condition and that imaging studies performed after the surgery showed no additional sources of significant symptoms, including disc herniation, spinal stenosis, or nerve root compression. On April 28, 2020, physician Ronald Brix noted that Plaintiff had a "painful range of motion with rotation of head" that began after he felt a pop when he turned his head. (AR 354). The notes from an MRI on that same day record that, when comparing to a CT of Plaintiff's cervical spine taken on February 19, 2020 (the day of the surgery; *see* AR 192), there were degenerative changes, including "moderate severe right and moderate left foraminal stenosis at C5-C6 and moderate severe left foraminal stenosis at C6-C7." (AR 363). On October 7, 2020, Plaintiff had an initial examination for physical therapy, where it is noted he expressed "[s]ignificant neck pain and shoulder pain" and "[d]ifficulty with neck or UE mvt 2nd pain [sic]." (AR 473).

On June 4, July 23, and September 10, 2020, Mr. Guzman recorded that Plaintiff's range of motion of his cervical spine involved "severe pain [with] motion." (AR 512, 524, 534). On June 4, 2020, Mr. Guzman recorded that Plaintiff also had "pain that goes down both shoulders" and it "[h]urts to lift arms and do some movements." (AR 534). On October 9, 2020, Mr. Guzman recorded that Plaintiff's range of motion of his cervical spine involved "moderate pain [with] motion," respectively. (AR 506). On November 6, 2020, Dr. Otchere noted cervical flexion and extension were limited due to pain. (AR 434). On January 11, 2021, Dr. Otchere noted muscle pain, joint pain, and stiffness. (AR 631).

The records cited *supra* indicate that the surgery was not entirely successful overall as to

Plaintiff's neck, spine, and shoulder issues. *Cf. Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) ("Overall, other than the initial surgical repair, [t]he treatment records reveal [that Smartt] received routine and conservative treatment since the alleged onset date. After Smartt's surgery, the ALJ cited documented evidence of 'conservative treatment,' including physical therapy, temporary use of a neck brace and wheelchair, and ongoing pain medication. As a result of these measures, the record shows both self-reported and objective improvement.") (quotation omitted; alterations in original).

### 3. Conservative Care

The record contains numerous references to Plaintiff's neck, spine, and shoulder pain, as discussed *supra*. Records also mention Plaintiff's use of opioid pain medications as well as a prescription for a hospital bed due to sleep interruptions caused by pain. *See, e.g.*, (AR 46, 438, 522-23, 535, 693). Plaintiff underwent one epidural steroid injection, with the record suggesting that neither the injection nor the medications were effective. (AR 447-48, 608-09). Additionally, as noted above, the record indicates that Plaintiff's surgery did not resolve entirely Plaintiff's issues. *See Godoy v. Comm'r of Soc. Sec. Admin.*, No. CV-23-02000-PHX-MTL, 2024 WL 4211770, at *7 (D. Ariz. Sept. 17, 2024) ("Treatment notes support that despite the left hip surgery, Plaintiff experienced continuing and increasing symptoms following the surgery. Because the surgery was not successful, it does not support the claim that it was conservative.");

Thus, the ALJ erred in characterizing Plaintiff's treatment as generally conservative. *See Carlos M. A. v. Kijakazi*, No. ED CV 22-0038-E, 2022 WL 16894847, at *3 (C.D. Cal. July 11, 2022) (collecting cases and noting that "Plaintiff's treatment included multiple surgeries, injections and prescriptions for opioid pain medication (Norco)" and that "[s]uch treatment cannot properly be characterized as 'conservative' within the meaning of Ninth Circuit jurisprudence"); *see also Delsid v. O'Malley*, No. 1:23-cv-00665-BAM, 2024 WL 2318045, at *5 (E.D. Cal. May 22, 2024) (collecting cases and noting "the ALJ characterized Plaintiff's treatment as conservative, noting her regular Toradol injections and medication management" and that "Courts, including courts in the Ninth Circuit and in this district, more recently have questioned whether injections (and even pain medications) constitute conservative treatment").

While it is possible other evidence and treatment history in the record informed the ALJ's assessment of Plaintiff's credibility, the ALJ's opinion does not expressly make any such finding nor permit any such reasonable inference by the Court. *See Burch*, 400 F.3d at 680 (holding an ALJ "must specify what testimony is not credible and identify the evidence that undermines" the plaintiff's complaints).

#### 4.   Plaintiff's Use of Marijuana

The ALJ mentions Plaintiff's use of marijuana when evaluating the symptom testimony, noting that Plaintiff had difficulty refraining from using "illegal drugs as required by his pain contract." (AR 28). Plaintiff cites to *Kamp v. Kijakazi* in support of the assertion that the ALJ's use of the term "illegal drugs" suggests an examination of Plaintiff's character, in contravention of SSR 16-3p. (Doc. 12 at 18-19; citing *Kamp*, 2023 WL 1879469, at *2 n.4). However, *Kamp* involved mental impairments and, there, the plaintiff "continued to use marijuana medicinally with his providers' permission." *Kamp*, 2023 WL 1879469, at *2. Here, the record shows that Plaintiff's pain contract did not allow marijuana use. *See* (AR 608).

Regardless, there is no indication that the ALJ conducted an examination of Plaintiff's character as a result of his marijuana use. Insofar as the ALJ did intend to discount Plaintiff's credibility on this ground, the ALJ did not provide any reasoning to support such a finding. For example, the ALJ does not reference any inconsistent statements by Plaintiff in regards to marijuana use. *Cf. Brown v. Colvin*, No. 2:14-cv-23-PRC, 2015 WL 438723, at *9 (N.D. Ind. Feb. 3, 2015) ("The ALJ did not discredit Plaintiff because he used marijuana but rather because he made inconsistent statements about that use. It is proper for an ALJ to consider inconsistencies in a claimant's statements in making a credibility determination").

*        *        *        *        *

In sum, the medical evidence cited by the ALJ in support of his discounting the Plaintiff's symptom testimony does not meet the relevant clear and convincing standard. A review of the ALJ's citations to the record, as well as accompanying records not cited by the ALJ, does not indicate clear inconsistency, resolution of symptoms, or notable and continuing improvement.

Because, the medical evidence does not evidence clear and convincing grounds to reject

15

Plaintiff's symptom testimony regarding motor and sensory deficits associated with his cervical condition, as well as pain, the ALJ's citation to the medical record to discount Plaintiff's symptom testimony did not meet the applicable clear and convincing standard.

**B. Whether the ALJ Failed to Properly Evaluate the Medical Source Opinion of Carlos Guzman**

Because Plaintiff applied for benefits after March 27, 2017, his claim is governed by the agency's newest regulations applicable to an ALJ's evaluation of medical opinions. 20 C.F.R. § 416.920c. Under these regulations, the Commissioner does "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical findings(s), including those from [a plaintiff's] medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Thus, the regulations require an ALJ to apply the same factors to all medical sources when considering medical opinions and no longer mandate particularized procedures that the ALJ must follow in considering opinions from treating sources. *See* 20 C.F.R. § 404.1520c(b) (the ALJ "is not required to articulate how [he] considered each medical opinion or prior administrative medical finding from one medical source individually."); *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017).

Instead, "[w]hen a medical source provides one or more medical opinions or prior administrative medical findings, [the ALJ] will consider those medical opinions or prior administrative medical findings from that medical source together using" the following factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; (5) other factors that "tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(a), (c)(1)-(5). The most important factors to be applied in evaluating the persuasiveness of medical opinions and prior administrative medical findings are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), (b)(2). Regarding the supportability factor, the regulation provides that the "more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s), the more persuasive the medical opinions ... will be." 20 C.F.R. § 404.1520c(c)(1). In other words, "[s]upportability means the extent to which a medical source supports the medical opinion by

16

explaining the 'relevant ... objective medical evidence.'" *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (quoting 20 C.F.R. § 404.1520c(c)(1)). Regarding the consistency factor, the "more consistent a medical opinion(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) ... will be." 20 C.F.R. § 404.1520c(c)(2).

The ALJ must explain in his decision how persuasive he finds a medical opinion and/or a prior administrative medical finding based on these two factors. 20 C.F.R. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he] considered the [other remaining factors]," except when deciding among differing yet equally persuasive opinions or findings on the same issue. 20 C.F.R. § 404.1520c(b)(2)-(3). Further, the ALJ is "not required to articulate how [he] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d).

Nonetheless, the Court must determine whether the ALJ adequately explained "how [he] considered the supportability and consistency factors" relative to medical opinions and whether the reasons were free from legal error and supported by substantial evidence. *Woods*, 32 F.4th at 792-93.

### i. *Parties' Contentions*

Plaintiff argues that the ALJ ignored the fact that Mr. Guzman's opinion supported his findings with references to Plaintiff's diagnoses, clinical findings, and symptoms, including pain. (Doc. 12 at 21; citing AR 29, 423, 426). Plaintiff asserts that Mr. Guzman's treatment notes also supported his opinion, citing to record evidence. *Id.* at 2-22 (citing AR 495, 506, 512, 522, 534-35). Plaintiff argues that, in finding that the record did not show loss of sensation or function in Plaintiff's hands, the ALJ ignored a record from physician Mark Levy noting bilateral hand weakness, and the ALJ erroneously found that the record showed Plaintiff's condition improved after his February 2020 neck surgery. *Id.* at 22 (citing AR 638). Plaintiff asserts that the ALJ did not cite to any specific evidence. *Id.* at 22-23.

Defendant asserts that the medical records did not support Mr. Guzman's limitations. (Doc. 15 at 27; citing AR 29, 480-535, 643-99). Defendant argues that surgery did result in improved neurological functioning and Plaintiff "generally exhibited normal upper extremity strength and

sensation." *Id.* at 28.  Defendant does not cite to any portions of the administrative record in support of this contention.  Defendant also argues that the ALJ recognized Plaintiff's ongoing pain and functional limitation but reasonably relied on Dr. Otchere's findings of normal strength …" Defendant asserts that, because the Court can infer the ALJ's rationale based on the decision as a whole, the ALJ's "articulation was proper" and supported by substantial evidence.  *Id.*

### ii.  Analysis

Here, the ALJ provided the following reasoning in discounting the opinions of Mr. Guzman:

> The claimant's treating medical provider, Carlos Guzman, a physician's assistant, submitted a medical statement containing extremely limited and work-preclusive physical restrictions. However, there is neither evidence in Mr. Guzman's own records nor any other record of medical care to support such extreme limitations in physical functioning. Generally, the claimant's records show that he experienced improvement in terms of physical functioning following his surgery, though he noted persistent pain. Mr. Guzman did not include medical findings supporting these limitations, and for many of the limitations, none are apparent. For instance, he purports to limit the claimant in grasping, twisting, and fine manipulation, but there is no finding of any loss of sensation, dexterity, or strength in the hands. Similarly, while he has limited the claimant's use of foot controls, there is no corresponding medical finding. Overall, much of Mr. Guzman's statement lacks sufficient support from objective medical evidence, and therefore, I find it unpersuasive.

(AR 29-30).

Mr. Guzman provided a physical residual function capacity medical source statement.  *See* (AR 423-426).  Therein, he states that Plaintiff has cervical spondylosis, spinal stenosis, and severe neck and back pain, as well as muscle spasms and headaches.  Mr. Guzman provides that Plaintiff's impairments, symptoms, and limitations have lasted since August 26, 2019.  (AR 423).  Mr. Guzman opines that Plaintiff has significant limitations on his capacity to lift weight, walk, climb, and use his hands, fingers, and arms in a work environment.  Mr. Guzman states that Plaintiff has depression and anxiety and that his attention and concentration would be frequently disrupted due to pain and stress, and he would frequently be off-task during, absent from, or unable to complete an eight-hour workday.  (AR 423-426).

The ALJ did not cite to any medical records in connection with his discounting Mr.

18

Guzman's opinions.  As noted *supra* in subsection (A), the medical record evidence indicates that the surgery was not completely successful overall.  Thus, the ALJ's reasoning that "records show that [Plaintiff] experienced improvement in terms of physical functioning following his surgery" is not supported by the medical record as cited by the ALJ in other portions of the decision and the ALJ provides no other citations in support of this contention.  Further, the ALJ states that "there is no finding of any loss of sensation, dexterity, or strength in the hands."  However, Dr. Levy notes on July 22, 2021, that Plaintiff reported "bilateral upper extremities weakness and hand grip weakness since prior to the surgery," with "10/10 pain" that "radiates to bilateral shoulders and bilateral upper arm and lower arms and bilateral hand weakness."  (AR 638-39).  The ALJ does not cite this record in regard to his conclusions nor provide any other discussion as to the relevant supportability and consistency factors.

Thus, the ALJ did not adequately consider the supportability and consistency of the medical opinion evidence and support his findings with substantial evidence.  *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *Leanne B. v. Comm'r Soc. Sec. Admin.*, No. 2:25-cv-00175-TLF, 2026 WL 705226, at *3 (W.D. Wash. Mar. 12, 2026) ("The ALJ may reject a doctor's opinions when they are inconsistent with or unsupported by the medical evidence.  But the agency [must] set forth the reasoning behind its decisions in a way that allows for meaningful review.") (quotations omitted, alterations in original; citing, *inter alia*, *Embrey*, 849 F.2d at 421).

### C. Whether the ALJ Failed to Properly Evaluate If Plaintiff Met or Equaled Listing of Impairment 5.08

"The listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity."  *Kitchen v. Kijakazi*, 82 F.4th 732, 741 (9th Cir. 2023) (quotation and citation omitted).  For an impairment to meet a listing, the claimant "must meet *all*

19

of the specified medical criteria" for the listing. *Id.* (emphasis in original). "If an impairment does not meet a listing, it may nevertheless be medically equivalent to a listed impairment if the claimant's symptoms, signs, and laboratory findings are at least equal in severity to those of a listed impairment." *Id.* However, "a claimant cannot base a claim of equivalence on symptoms alone" and "the claimant's impairment does not medically equal a listed impairment unless the claimant has signs and laboratory findings that are equal in severity to those set forth in a listing." *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020). "The burden is on the claimant to provide evidence that her impairments meet or equal a Listing at step three of the sequential evaluation process." *Fleming v. Comm'r of Soc. Sec. Admin.*, 500 F. App'x 577, 579 (9th Cir. 2012) (citing *Burch*, 400 F.3d at 683).

### i. *Parties' Contentions*

Plaintiff asserts that the "ALJ acknowledged that the record contained the required BMI calculations, but found the listing was not met because Plaintiff's digestive disorder did not cause the weight loss and because Plaintiff was not under any treatment plan for his weight loss." Plaintiff argues that the ALJ only considered "Plaintiff's drug-induced constipation." (Doc. 12 at 23-24; citing AR 27). Plaintiff notes that he was assessed as underweight in February 2020 and July 2021, with his condition described as anorexia by Mr. Guzman and as "anorexia versus malnutrition" in a treatment note submitted to the Appeals Council, which "showed Plaintiff had a disorder of the digestive system which was connected to his weight loss." *Id.* at 24 (citing AR 12, 27, 556, 639). Plaintiff asserts that the record evidenced weight loss despite continuing treatment, and that he testified that he has no appetite because of pain and that pain caused him headaches that resulted in dizziness and vomiting, as well as nausea and inability to "tolerate regular sit down meals." Plaintiff notes that his "administrative representative submitted a brief on August 27, 2021, which asserted that [his] impairments also medically equaled Listing 5.08," citing his low BMI and his report that he cannot gain significant weight. *Id.* at 25 (citing AR 12, 47, 58, 202, 608, 611).

Defendant asserts that Plaintiff's BMI remained "generally steady between 16.32 and 17.9, even prior to the alleged onset date of June 1, 2020," and that there is no evidence of a medical connection between Plaintiff's weight and a disorder or impairment, and that Plaintiff's being

underweight is, by itself, insufficient to meet Listing 5.08.  Defendant asserts Mr. Guzman did not assess any digestive disorder in his October 23, 2020, opinion and, even if Mr. Guzman's reference to Plaintiff as having anorexia established the existence of a digestive disorder, Mr. Guzman did not indicate that this disorder was responsible for Plaintiff's "baseline low weight."  (Doc. 15 at 29-31; citing, *inter alia*, 486-87, 515, 549, 642, 676).

### ii.   *Analysis*

Listing 5.08 provides: "Weight loss due to any digestive disorder, despite adherence to prescribed medical treatment, with BMI of less than 17.50 calculated on at least two evaluations at least 60 days apart within a consecutive 12-month period."  20 C.F.R. § 404, Subpt. P, App. 1, § 5.08.

The Social Security Regulations offer guidance in evaluating which disorders are "digestive disorders" for purposes of Listing 5.08.  *See* 20 C.F.R. § 404, Subpt. P, App. 1 § 5.00.  The regulations provide as follows: "Impairments other than digestive disorders that cause weight loss should be evaluated under the appropriate body system for that impairment.  For instance, weight loss as a result of chronic kidney disease should be evaluated under our rules for genitourinary disorders (see 6.00), and weight loss as the result of an *eating disorder should be evaluated under our rules for mental disorders* (see 12.00).  However, if you develop a digestive disorder as the result of your other impairment, we will evaluate the acquired digestive disorder under our rules for digestive disorders."  20 C.F.R. § 404, Subpt. P, App. 1 § 5.00(F)(1) (emphasis added).

The ALJ acknowledged that Plaintiff had several BMI calculations below 17.5 during a 60-day period, which met one of the requirements of Listing 5.08.  The ALJ found that Plaintiff does not have a condition meeting Listing 5.08 because of the "lack of evidence concerning a connection between weight loss and a digestive disorder."  Specifically, the ALJ found that the "fact that the claimant's weight was below a 17.50 BMI prior to starting Norco tends not to support weight loss due to side effects of constipation from this drug … neither the claimant nor his treatment provider could explain why constipation would cause weight *loss*."  (AR 27; emphasis in original).  The ALJ stated that Plaintiffs "historically thin frame along with the lack of evidence connecting any weight loss to drug side effects is insufficient to satisfy this listing."  *Id.*

21

Plaintiff does not identify a digestive disorder.  Plaintiff's references to anorexia do not tend to demonstrate a digestive disorder but, rather, a mental disorder, pursuant to the plain language of Listing 5.08.  *See McCalb v. Kijakazi*, No. 2:21-cv-01348-EJY, 2022 WL 1658820, at *6 (D. Nev. May 25, 2022) ("Substantial evidence supports the ALJ's conclusion that Plaintiff suffers from anorexia, but does not support that Plaintiff suffers from a digestive disorder as defined by the Listing for digestive disorders.").  Additionally, the listing requires "treatment of the underlying digestive disorder, not treatment specific to weight loss (which is a symptom of the impairment, not the impairment itself.)").  *Terron M. v. Saul*, No. 2:18-cv-09737-KES, 2019 WL 3029106, at *3 (C.D. Cal. July 11, 2019) (remanding and noting plaintiff was prescribed Norco, Bentyl, Phenergan, Albuterol, and anti-inflammatory drugs for stomach problems and constipation, and the ALJ found plaintiff suffered from severe impairments affecting his digestive system, including pancreatitis).

Here, Plaintiff did not attest and does not identify records evidencing that he suffers from a digestive disorder, itself a necessary requirement of Listing 5.08.  As noted above, anorexia does not meet the definition within the listing.  As such, there can be no indication of treatment of such a disorder.  *See Daron L. H. v. Comm'r Soc. Sec. Admin.*, No. 3:20-cv-01834-AR, 2022 WL 4299138, at *3 (D. Or. Sept. 19, 2022) ("Although Daron was diagnosed with gastritis and GERD, the record lacks evidence that those diagnoses were being treated with medications, and that despite his treatment, he lost weight … the ALJ did not identify any digestive disorder as a severe impairment in the step two findings."); *Amber R. v. Kijakazi*, No. 1:20-cv-03115-MKD, 2021 WL 8134197, at *5 (E.D. Wash. Dec. 28, 2021) ("Plaintiff argues she equals the listing, because she had a low BMI and she later had nausea, vomiting, and a sigmoid kink [but] does not demonstrate that she had weight loss due to any of these symptoms [nor] that she had weight loss despite prescribed treatment.  Plaintiff argues she was seen for pain medication and underwent surgeries for her abdominal pain.  While Plaintiff took pain medication, there is no evidence the pain medication nor surgery was treating any condition that caused her to lose weight.") (citations omitted).

Plaintiff cites to a supplemental brief provided to the ALJ to demonstrate that he met the

22

requirement to present "evidence in an effort to establish equivalence," sufficient to require the ALJ to "discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination." *Ford*, 950 F.3d at 1157 (quoting *Burch*, 400 F.3d at 683). The brief provides a fluctuating BMI ranging from 16.66 to 17.26, and cursory argument that Plaintiff has "not gained significant weight," with records to be submitted shortly thereafter. *See* (AR 202). During the hearing, Plaintiff's counsel informed the ALJ that, with the supplemental brief, he submits that Plaintiff "meets and equals listing 5.08 … He has not weighed I believe more than 108 pounds since 2019 [sic]," and evidence "will also state he has not recovered" from a neck injury that required surgery. Upon the ALJ's questioning, counsel elaborated that Plaintiff's BMI indicated malnutrition, he had been diagnosed with drug induced intoxication which "lessens his ability go gain weight [sic], which would be a digestive disorder," and his "BMI is always less than … 17.5." (AR 43). The ALJ noted that he would review the supplemental brief. (AR 45).

A treatment note from Mr. Guzman dated January 13, 2022, states that Plaintiff has "anorexia versus malnutrition." However, this record was submitted to the Appeals Council and was not before the ALJ at the time of the decision. (AR 12). Plaintiff testified that, two to three times a month, his headaches caused him to get dizzy and vomit. (AR 58). Medical records recorded that he had poor appetite, was not eating for two days and was nauseated and throwing up, as well as counseling regarding dietary education for weight gain. *See, e.g.*, (AR 487, 497, 507, 550, 556, 608, 658).

Thus, the ALJ did nor err in finding that Plaintiff did not meet Listing 5.08. However, Plaintiff's counsel presented a supplemental brief and testified at the hearing regarding equivalency for Listing 5.08, a medical record post-dating the hearing from Mr. Guzman mentions "anorexia versus malnutrition," and the record presents instances of nausea, vomiting, poor appetite, and dietary counseling. Additionally, as noted *supra*, the ALJ did not adequately consider the supportability and consistency of the medical opinion evidence and support his findings with substantial evidence, nor support rejection of symptom testimony with clear and convincing evidence. *See Nunes v. Berryhill*, No. 17-cv-00706-RMI, 2018 WL 1399852, at *5 (N.D. Cal. Mar. 20, 2018) (finding equivalency argument not waived because plaintiff presented notations in her

pre-hearing brief that she had difficulty eating and gaining weight because of IBS, she presented her theory as to Listing 5.08 in her own words at the hearing, and the record was "teeming with medical evidence supporting a Listing 5.08 equivalency").

Though the record before the Court may not evidence as strong a case for remand on the equivalency issue as in *Nunes*, "[a]s the case is being remanded to reconsider the medical opinion evidence and Plaintiff's symptom claims, and Plaintiff has presented evidence that [his] impairments may be of equal severity to Listing 5.08, the ALJ is instructed to reconsider whether Plaintiff's impairments meet or equal [] Listing 5.08." *Jarrid M. v. Saul*, No. 1:19-cv-03057-MKD, 2020 WL 13926045, at *14 (E.D. Wash. June 24, 2020); *see Chlarson v. Berryhill*, No. 2:16-cv-01566-BHS-JRC, 2017 WL 4355908, at *8 (W.D. Wash. July 28, 2017), *report and recommendation adopted*, No. C16-1566BHS, 2017 WL 3641907 (W.D. Wash. Aug. 24, 2017) (finding that, because the Court already found the ALJ erred in considering the medical evidence, and as the ALJ did not consider equivalency to Listing 5.08, on remand the ALJ should explicitly address Listing 5.08 and combined impairments).

**D. Whether the ALJ Failed to Consider Plaintiff's Non-severe Impairments When Formulating the RFC**

A claimant's RFC is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); *id.* § 416.945(a).  The RFC assessment is an administrative finding based on all relevant evidence in the record, not just medical evidence.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).

In general, an ALJ must consider the limiting effect of all impairments, including those that are non-severe, in assessing a claimant's RFC.  *See* 20 C.F.R. § 404.1545(a)(2); *id.* § 416.945(a)(2). However, the ALJ is not required to include limitations in the RFC if the record supports a conclusion that the non-severe impairments do not cause a significant limitation in the claimant's ability to work.  *See Koshak v. Berryhill*, No. CV 17-6717-AFM, 2018 WL 4519936, at *8 (C.D. Cal. Sept. 19, 2018) (finding that the ALJ was not required to include insignificant mental impairment in Plaintiff's RFC since he provided reasons supported by substantial evidence to justify non-inclusion).  If the ALJ "actually reviews the record and specifies reasons supported by

24

substantial evidence for not including the non-severe impairment [in the RFC determination], the ALJ has not committed legal error." *Medlock v. Colvin*, No. CV 15-9609-KK, 2016 WL 6137399, at *5 (C.D. Cal. Oct. 20, 2016); *see K.B. v. Comm'r of Soc. Sec.*, No. 24-cv-06218-VKD, 2025 WL 2780787, at *6 (N.D. Cal. Sept. 30, 2025) (finding the ALJ did not err because the ALJ specifically considered plaintiff's asthma in determining the RFC and concluded that it presented no more than mild functional limitations without any significant limitation on her ability to do basic work activities).

### i.  Parties' Contentions

Plaintiff asserts that, though the ALJ acknowledged his non-severe impairments of asthma and visual loss, the ALJ "did not consider the limitations stemming from Plaintiff's asthma or visual loss" when formulating the RFC.  The ALJ found the prior administrative medical findings persuasive, and physician H. Samplay found that Plaintiff "should avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation, etc. due to his asthma [sic]."  Plaintiff argues that the RFC did not consider Plaintiff's asthma, particularly as the record showed he was prescribed inhalers, nor incorporate Dr. Samplay's findings.  (Doc. 12 at 26; citing, *inter alia*, AR 27-30, 29, 90, 480, 551, 700).  Plaintiff asserts that he reported sensitivity to the sun and blurred vision, was diagnosed with dry eye syndrome and conjunctiva of the left eye, and seen for eye discharge and for irritation of his left eye.  Plaintiff notes that the ALJ did not discount these allegations regarding his vision nor include them in the RFC.  *Id.* at 27 (citing AR 293, 486, 592, 650, 668, 670-79).

Defendant asserts that the record does not establish "any significant deficits that would need to be included in the RFC, as Drs. Tanaka and Samplay agreed." (Doc. 15 at 26; citing AR 74, 89). Defendant notes that Plaintiff was on eye drops but had acceptable vision with correction, with no indication of follow-up after referral to an ophthalmologist for blurred vision, and had conjunctivitis for a few months in 2021 but treated with eye drops.  *Id.* (citing AR 418-19, 486-87, 668-73, 679-83).  Defendant asserts that, other than prescriptions for inhalers, Plaintiff's "asthma is mentioned very little."  *Id.* at 25 (citing 480-482, 493-98, 528-31, 654-60, 668-73, 681).

### ii.  Analysis

Here, the ALJ found asthma and visual loss to be non-severe impairments and discusses

25

Plaintiff's asthma when finding it did not meet Listing 3.03. (AR 25-26). The ALJ does not include discussion therein regarding asthma limitations relevant to the RFC. When discussing the RFC, the ALJ notes that Plaintiff alleged asthma and cataracts. (AR 28). Nowhere in the opinion does the ALJ discuss limitations from asthma or visual loss, providing only that the "evidence shows that these conditions were managed medically without deterioration or crisis and were properly controlled with standard treatment." (AR 25). The ALJ does not provide any further discussion nor any citations to the record, nor does the RFC include limitations relating to asthma or visual loss.

Thus, there is no indication that the ALJ "actually review[ed] the record" nor did the ALJ specify "reasons supported by substantial evidence for not including the non-severe impairment [in the RFC determination]." *Medlock*, 2016 WL 6137399, at *5. The record evidences that Plaintiff was prescribed an inhaler for persistent cough or shortness of breath, diagnosed with conjunctiva and irritation of the left eye, myopia of both eyes, blurred vision, and dry eyes syndrome, and indicated he had cataracts and sensitivity to the sun in his disability appeal report. *See* (AR 292, 480, 486, 551, 592, 668, 670-79, 700). As the ALJ found that Plaintiff had the non-severe impairments of asthma and visual loss, and noted Plaintiff's report of cataracts, the ALJ was required to specify reasons supported by substantial evidence for not incorporating limitations from the non-severe impairments of asthma and visual issues into the RFC. *See Georgia F. v. SSA Comm'r*, No. 24-cv-09072-EKL, 2026 WL 747456, at *5 (N.D. Cal. Mar. 17, 2026) ("Here, the ALJ did not meaningfully assess the extent to which Plaintiff's 'non-severe' impairments would impact her RFC … the record reflects that Plaintiff has a variety of additional conditions that … must nevertheless be considered as part of Plaintiff's RFC [including] Plaintiff's asthma/COPD, depression, anxiety, visual impairments, and balance issues. As to Plaintiff's asthma and COPD, the ALJ did not provide for any environmental restrictions, such as avoiding fumes, dust, and poor ventilation."); *cf. Jenkins v. O'Malley*, No. 1:22-cv-00309-BAM, 2024 WL 3890105, at *7 (E.D. Cal. Aug. 21, 2024) ("Specifically, the ALJ considered medical evidence demonstrating that her asthma appeared to be stable. In so doing, the ALJ … concluded it was non-severe. Despite finding the condition non-severe, the ALJ determined that a limitation to only occasional exposure to

26

fumes, dusts, gases, and poor ventilation accommodated her non-severe condition.  The ALJ therefore considered limitations imposed by Plaintiff's asthma in developing the RFC.").

Thus, the ALJ committed legal error in failing to specify reasons supported by substantial evidence for not incorporating limitations from Plaintiff's non-severe impairments into the RFC.

**E.  Remedy**

Plaintiff seeks remand of this case to the Commissioner for further proceedings. (Doc. 12 at 27).  Defendant requests the Court affirm the ALJ's decision.  (Doc. 15 at 30).  "The decision whether to remand for further proceedings or simply to award benefits is within the discretion of court." *Trevizo*, 871 F.3d at 682 (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987)). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (emphasis omitted).

In this case, the ALJ erred by failing to offer clear and convincing reasons supported by substantial evidence to reject Plaintiff's symptomology testimony, failing to support discounting the medical opinions of Mr. Guzman with substantial evidence, and failing to specify reasons supported by substantial evidence for not incorporating limitations from non-severe impairments into the RFC.  Given these errors, the undersigned will remand for further proceedings.

**IV.   CONCLUSION AND ORDER**

For the reasons stated above, IT IS HEREBY ORDERED that:

1.  Plaintiff's motion for summary judgment (Doc. 12) is GRANTED;

2.  The ALJ's decision is REVERSED;

3.  This matter is REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this decision; and

4.  The Clerk of the Court is directed to enter judgment in favor of Plaintiff and against Defendant and to then close this case.

IT IS SO ORDERED.

Dated:   **April 30, 2026**                                   _____
                                                             UNITED STATES MAGISTRATE JUDGE